UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEREMY J. SCHROO,

               Petitioner,

      v.

THOMAS LAVALLEY, SUPERINTENDANT,
CLINTON CORRECTIONAL FACILITY,

               Respondent.

---

**DECISION AND ORDER**

14-CV-06131 EAW

## INTRODUCTION

Petitioner Jeremy J. Schroo ("Petitioner"), an inmate confined at the Clinton Correctional Facility in Dannemora, New York, has timely petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). On October 26, 2009, Petitioner was convicted in Yates County Court of two counts of sexual abuse in the first degree, two counts of endangering the welfare of a child, and one count of course of sexual conduct against a child in the first degree, and sentenced to 25 years incarceration. (*Id.* at 2). Petitioner seeks a writ of habeas corpus on the ground that his appellate counsel provided ineffective legal assistance. (*Id.* at 6). For the reasons set forth below, habeas relief is denied and the petition is dismissed.

-1-

## BACKGROUND AND PROCEDURAL HISTORY

On March 10, 2006, indictment no. 08-65 was filed in Yates County Court, charging Petitioner with two counts of sexual abuse in the first degree, two counts of endangering the welfare of a child, and one count of course of sexual conduct against a child in the first degree. (Dkt. 5-2 at 14). These charges stemmed from a report made on August 27, 2008, by the mother of "Child 1"[1] (*Id.* at 62). Child 1 was born on June 30, 2002, and was friends with Petitioner's daughter "Child 2", who was nine years old in August 2008. (*Id.* at 64). Child 1 and her sister visited Child 2 and spent the night at Petitioner's house on both August 25, 2008, and August 26, 2008. (*Id.*). Child 1 reported to her mother, and then to the Yates County Sheriff's department, that while she was at Petitioner's house, Petitioner laid down on a couch with her, removed her clothing and his pants, and put his penis between her legs and touched her genitals. (*Id.*). Child 2 also subsequently alleged that her father, Petitioner, had sexually abused her. (Dkt. 1-4 at 4-7).

Petitioner was tried in Yates County Court, beginning on July 27, 2009. (Dkt. 1-2 at 2). For purposes of this Decision and Order, the Court need not recount all the testimony that was presented at trial. Instead, the Court summarizes those portions of the testimony that are relevant to the claims raised in the petition.

---

[1] The minor victims of the sexual offenses described herein are referred to as "Child 1" and "Child 2" in an effort to protect their privacy.

Child 2 was the prosecution's second witness. (Dkt. 1-3 at 42). Child 2 testified that during the final period of time she spent at Petitioner's house, Child 1 and Child 1's sister came to stay for two nights. (*Id.* at 46-47). Child 2 testified, over defense counsel's objection, that she and Child 1's sister were outside playing while Child 1 was inside with Petitioner, and that when they returned to the house, Child 1 joined them in Child 2's bedroom and told them that Petitioner had put his penis by her vagina. (Dkt. 1-3 at 47-50, Dkt. 1-4 at 1-3). Child 2 also testified that she stayed some nights at Petitioner's house while Child 1 and her sister were not there, that she slept in her father's bed, and that he put his hands down her pants and touched her vagina. (Dkt. 1-4 at 4-5). Child 2 testified that she was in the first grade the first time Petitioner sexually abused her and that he continued to do so while she was in the second grade. (*Id.* at 4). Child 2 also testified that Petitioner had licked her vagina while she was in the second grade. (*Id.* at 4-5). Child 2 did not reveal this abuse when she was asked about it by Yates County Sheriff's Investigator Michael Christensen. (*Id.* at 6-7). Instead, Child 2 disclosed the abuse to her mother after her mother read her a book called "My Body is Mine." (*Id.* at 7). Child 2 testified that she did not initially reveal the abuse because Petitioner had told her that if she ever told anyone about it, he would go to jail. (*Id.* at 8).

On cross-examination, Child 2 testified that on the night Child 1 told her about Petitioner's sexual abuse, she slept on the living room floor with Child 1 and her sister.

(Dkt. 1-4 at 45).  Child 2 further testified that she got up in the middle of the night and went into Petitioner's room.  (*Id.* at 46).

After Child 2 testified, the prosecution called Edith Mann as an expert witness. (Dkt. 1-5 at 9).  Defense counsel objected and asked the court to preclude the testimony on the basis that he had not been given notice that the prosecution was going to call an expert witness to testify about child sexual abuse accommodation syndrome ("CSAAS").  (*Id.* at 10).  Defense counsel alternatively requested an open-ended adjournment so that he could "get [his] own expert and notify the government of that expert's testimonies and qualifications so that [he] could contradict or at least challenge the testimony of this particular expert."  (*Id.* at 11).  When the prosecutor explained that no notice was required under New York law because Ms. Mann had never examined or treated the victims and was not going to testify to a diagnosis or a diagnostic finding, defense counsel raised an additional objection on the basis of relevancy.  (*Id.* at 12-13).  The court denied defense counsel's objections.  (*Id.* at 13-14).  Defense counsel then informed the trial court that he "would be prepared to cross-examine" Ms. Mann "now that [he'd] received notice that this witness is going to testify to the syndrome specifically."  (*Id.* at 14).  The trial court granted defense counsel's request to adjourn the cross-examination of Ms. Mann to the following day to permit counsel to review his materials and prepare his cross-examination. (*Id.* at 15).

Ms. Mann testified that she was the executive director of Safe Harbors of the Finger Lakes, Inc., and a licensed clinical social worker. (*Id.* at 16). She then testified about the history of CSAAS, explained that it was a tool for understanding child victims of sexual abuse, and described the categories of CSAAS. (*See id.* at 20-39). On cross-examination, defense counsel discussed the history, uses, and misuses of CSAAS evidence and elicited from Ms. Mann that the individual who originally identified CSASS had "indicated quite clearly in [a 1992] article that the syndrome he created had, in fact, been misused, not only by law, in the courts, but also by practitioners in the . . . counseling field" and that CSAAS "had absolutely no scientific instrumentation involved whatsoever." (Dkt. 1-6 at 12-26).

The prosecution also called Child 1 as a witness after the trial court conducted *voir dire* to determine if she was competent to testify. (*See* Dkt. 1-7 at 33-43). Child 1 testified that she had stayed overnight at Petitioner's house, that she was lying on the couch with Petitioner watching television while her sister and Child 2 played hide-and-go-seek, and that Petitioner pulled down her underwear, pulled down his own pants, put his penis between her legs and touched her genitals. (*Id.* at 47-50). Child 1 further testified that after the sexual abuse, she got up, went into the bedroom where her sister and Child 2 were located, and told them what had happened. (*Id.* at 50). Child 1 also testified that she told her mother what Petitioner had done the next day. (Dkt. 1-8 at 1). On cross-examination, Child 1 testified that Petitioner fell asleep after he touched her sexually and that she finished watching the television program and left the living room. (*Id.* at 14-18).

Count 3 of the indictment originally alleged Petitioner sexually abused Child 2 "on or about one day during the period August 27 through August 31, 2008. . . ." (Dkt. 5-2 at 37). At the close of proof, the prosecution moved, pursuant to New York Criminal Procedure Law § 200.70, to amend Count 3 to conform to the proof and to include August 26, 2008. (*See* Dkt. 1-9 at 40-41). Defense counsel conceded that the prosecution had the right to amend, but objected on the basis that all trial decisions had been made based on the information in the indictment and the bill of particulars. (*Id.* at 41-42). The trial court granted the prosecution's motion and allowed the amendment. (*Id.* at 42).

Petitioner was convicted on all counts in the indictment and was sentenced to 25 years incarceration. (Dkt. 1 at 2). Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department. (*Id.* at 3). His conviction was affirmed on direct appeal on September 30, 2011. (*Id.*). Petitioner sought review by the New York State Court of Appeals, which denied his request for leave to appeal on July 30, 2012. (*Id.*).

Petitioner filed a petition for a writ of error *corim nobis* with the New York State Supreme Court, Appellate Division, Fourth Department, on July 27, 2013. (*Id.* at 4). In his petition, Petitioner argued that his appellate counsel had provided him with ineffective legal assistance. (*Id.*). The state appellate court denied Petitioner's petition on November 8, 2013. (*Id.*). Petitioner requested leave to appeal the denial of his petition for a writ of

error *coram nobis* from the New York State Court of Appeals, which denied the request on January 17, 2014. (*Id.* at 5).

Petitioner filed the instant petition on March 19, 2014. (Dkt. 1). Respondent filed his answer and memorandum of law on May 27, 2014, and Petitioner filed a reply memorandum on June 16, 2014. (Dkt. 5, 6).

## DISCUSSION

### I. Legal Standard

28 U.S.C. § 2254 "authorizes a federal court to grant a writ only where a state holds a petitioner in its custody in violation of 'the Constitution or laws or treaties of the United States.'" *Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011) (quoting 28 U.S.C. § 2254(a)). Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a prisoner seeking habeas corpus relief with respect to a state court's denial of a claim can succeed only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" *Burt*, 134 S. Ct. at 15 (quoting 28 U.S.C. § 2254(e)(1)).

"AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* at 16. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

In this case, Petitioner seeks relief on the basis that he allegedly received ineffective assistance of counsel on direct appeal. The Sixth Amendment to the United States Constitution guarantees criminal defendants the effective assistance of counsel, including on direct appeal. Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), "[t]o establish ineffective assistance of appellate counsel, [petitioner] must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (quotations omitted). Where, as here, a state court has already rejected an ineffective assistance of counsel claim, a federal district court applies a "doubly deferential" standard of review and will grant relief only if the state court's determination was not merely incorrect, but objectively unreasonable. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

## II.   Petitioner's Appellate Counsel Was Not Ineffective

Petitioner was represented on direct appeal by D.J. and J.A. Cirando, Esqs.  (Dkt. 1-1 at 3).  Petitioner's appellate counsel appealed his conviction in Yates County Court to the New York State Supreme Court, Appellate Division, Fourth Department (the "Fourth Department"), and filed a 55-page brief setting forth nine arguments in support of the appeal.  (*Id.* at 3-64).  In particular, appellate counsel argued that: (1) the trial court improperly admitted a statement made by Petitioner; (2) the trial court improperly denied Petitioner's subpoena *duces tecum* for Child 1's school records; (3) the trial court improperly admitted Edith Mann's testimony regarding CSAAS because it was irrelevant and confusing to the jury; (4) Child 1 was improperly sworn as a witness; (5) the evidence was legally insufficient to support the verdict; (6) the conviction was contrary to the weight of the evidence; (7) Petitioner was denied due process of law due to prosecutorial misconduct; (8) Petitioner's constitutional right to a fair trial was violated; and (9) the sentence imposed was harsh and excessive.  (*Id.*).  Petitioner's appeal was denied by the Fourth Department. *See People v. Schroo*, 87 A.D.3d 1287 (4th Dep't 2011).

Petitioner now argues that his appellate counsel were ineffective because they "omitted three issues of substantial merit that relate to the fairness of Petitioner's trial." (Dkt. 1-11 at 15).  In particular, Petitioner contends that appellate counsel should have argued on direct appeal that: (1) the trial court improperly allowed the prosecution to present expert testimony about CSAAS without notice to the defense and without granting

trial counsel a continuance to obtain his own CSAAS expert; (2) the trial court improperly admitted Child 1's out-of-court statements to Child 2 as excited utterances; and (3) the trial court improperly permitted the prosecution to amend Count 3 at the close of proof.

Petitioner made these same arguments to the Fourth Department in a petition for a writ of error *coram nobis* filed on July 22, 2013. (Dkt. 1-1 at 112-144). The Fourth Department denied Petitioner's petition on November 8, 2013. (*Id.* at 146).

Because the Fourth Department has already denied Petitioner's claim that his appellate counsel were ineffective, the Court applies the "doubly deferential" standard of review. *See Knowles*, 556 U.S. at 123. As a result, Petitioner is entitled to relief only if he has demonstrated that it was objectively unreasonable for the Fourth Department to conclude that Petitioner's appellate counsel was constitutionally adequate. *Id.*

As discussed above, Petitioner argues in his petition that appellate counsel failed to present meritorious arguments on direct appeal and instead pursued weaker claims. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."). "However, a

petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533.

Having reviewed the record in this matter, the Court concludes that it was not objectively unreasonable for the Fourth Department to determine that the issues now identified by Petitioner are neither "significant and obvious" nor "clearly and significantly" stronger than the arguments raised on direct appeal.   Additionally, even assuming *arguendo* that Petitioner's appellate counsel should have raised these issues on direct appeal, Petitioner has failed to demonstrate that he was prejudiced by the allegedly deficient performance.

A.      **The Trial Court's Admission of Edith Mann's Testimony on CSAAS**

Petitioner does not dispute that, pursuant to New York State law, CSAAS evidence is admissible "for the purpose of explaining behavior that might be puzzling to a jury." *People v. Spicola*, 16 N.Y.3d 441, 465 (2011); *see also People v. Kirk*, 96 A.D.3d 1354, 1355 (4th Dep't 2012) (rejecting argument that trial court improperly admitted CSAAS testimony).   Petitioner also concedes that New York's criminal procedure law does not obligate the prosecution to notify defense counsel prior to calling an expert witness to testify generally about CSAAS. (*See* Dkt. 1-11 at 24).

Instead, Petitioner relies on four cases decided by the Second Circuit Court of Appeals in arguing that it was constitutional error for the trial court to admit Edith Mann's

testimony regarding CSAAS without granting trial counsel a continuance to obtain and call his own trial expert. (*See* Dkt. 1-11 at 21) (citing *Gersten v. Senkowski*, 426 F.3d 588 (2d Cir. 2005); *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003); *Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001); and *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001)). Petitioner also argues that pursuant to *Gersten*, *Eze*, *Pavel*, and *Lindstadt*, the prosecution had an affirmative obligation to provide notice to defense counsel that it intended to present CSAAS evidence. Petitioner has misapprehended the meaning of these cases.

In *Gersten*, the court held that defense counsel's performance was constitutionally deficient because he "failed to consult or call an expert on the psychology of child sexual abuse, or to educate himself sufficiently on the scientific issues." 426 F.3d at 611. The court further explained that defense counsel's failure resulted in his being "unable to mount an effective cross-examination [as to the prosecution's psychological expert witness], and miss[ing] an opportunity to rebut [the prosecution's] attempt at bolstering the alleged victim's credibility." *Id.*

In *Eze*, the court explained that, "when a defendant is accused of sexually abusing a child and the evidence is such that the case will turn on accepting one party's word over the other's, the need for defense counsel to, at a minimum, consult with an expert to become educated about the vagaries of abuse indicia is critical. The importance of consultation and pre-trial investigation is heightened where, as here, the physical evidence is less than conclusive and open to interpretation." 321 F.3d at 128 (quotation and citation

omitted).   As a result, the court remanded the matter to the district court for further investigation into, among other things, whether trial counsel had consulted with an expert regarding the accuracy of the evidence of sexual abuse presented by the prosecution's medical expert and why trial counsel had not called her own expert witness. *Id.* at 136-37.

In *Pavel* and *Lindstadt*, the evidence in question had to do with physical evidence of child sexual abuse. *Pavel*, 261 F.3d at 223-24; *Lindstadt*, 239 F.3d at 201.   In both cases, the court held that trial counsel's performance was ineffective because trial counsel failed to perform adequate pre-trial investigation into the prosecution's proffered physical evidence. *Pavel*, 261 F.3d at 223-25; *Lindstadt*, 239 F.3d at 201-02.

In other words, *Gersten*, *Eze*, *Pavel*, and *Lindstadt* all address the adequacy of trial counsel's performance with respect to issues of alleged sexual abuse of a child.   These cases do <u>not</u> stand for the proposition that either the prosecution or the trial court has an affirmative obligation to accommodate defense counsel's alleged failure to conduct adequate pre-trial investigation into the indicia of such abuse.   Based on the record in this case, it defies belief to argue that Petitioner's trial counsel could not have anticipated that "the case [would] turn on accepting one party's word over the other's. . . ." *Eze*, 321 F.3d. at 128; *see also Pavel*, 261 F.3d at 220-21 ("It should have been obvious to [defense counsel] from the outset that [the petitioner's] trial – like many sex abuse trials – was going to be a so-called 'credibility contest,' in which the word of the defendant's alleged

victims . . . would be set against the word of the defendant . . . , and in which there would be no substantial circumstantial evidence.").

From the earliest stages of the investigation into Petitioner's conduct, it was clear that the primary basis for any charges against him would be Child 1's and Child 2's testimony. Under these circumstances, defense counsel did not require affirmative notice from the prosecution to anticipate that the reliability of child victims of sexual abuse would be a key issue at trial. Indeed, as Respondent notes, a significant portion of Petitioner's defense rested on his argument that Child 2 had failed to report her alleged sexual abuse for two years. (*See, e.g.,* Dkt. 1-5 at 1-4). The trial court likely reached the same conclusion in deciding not to grant the continuance sought by trial counsel or to preclude Ms. Mann's testimony.

Moreover, the trial record does not support the conclusion that Petitioner's trial counsel failed to conduct a pre-trial investigation into CSAAS and other psychological indicia of child abuse. To the contrary, after the trial court denied his request for an adjournment to procure his own trial expert, defense counsel affirmatively stated that he already had the materials he needed to review in order to effectively cross-examine Ms. Mann, and that he simply needed until the next day to review these materials and prepare his cross-examination. (*See* Dkt. 1-5 at 14-15). Trial counsel's cross-examination of Ms. Mann reflected his preparation – he was able to walk Ms. Mann through the history of CSAAS, beginning with the earliest publications in 1983, to discuss with ease and obvious

understanding the use and misuse of CSAAS evidence, and to cite multiple articles and studies. (Dkt. 1-6 at 13-20).  In particular, trial counsel was able to elicit from Ms. Mann that the individual who originally identified CSASS had "indicated quite clearly in [a 1992] article that the syndrome he created had, in fact, been misused, not only by law, in the courts, but also by practitioners in the . . . counseling field" and that CSAAS "had absolutely no scientific instrumentation involved whatsoever." (*Id.* at 18).  Petitioner's appellate counsel could easily have concluded based on trial counsel's thorough and effective cross-examination of Ms. Mann that trial counsel had adequately anticipated and prepared for the presentation of CSAAS evidence.  Notably, the *Gersten* court specifically noted that trial counsel could have avoided constitutional inefficiency by "educat[ing] himself sufficiently on the scientific issues." 426 F.3d at 611.

This Court's "scrutiny of counsel's performance is highly deferential because [i]t is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Eze*, 321 F.3d at 125 (quotations omitted).  Under the circumstances, the Court cannot conclude that appellate counsel were outside the bounds of reasonable advocacy when they chose to pursue the argument that Ms. Mann's testimony was irrelevant, rather than making the argument that the prosecution was under an obligation to provide notice that it intended to call Ms. Mann or that the trial court should have granted

trial counsel an open-ended continuance to seek an expert.   Contrary to Petitioner's argument that the relevancy objection was unpreserved (*see* Dkt. 1-11 at 27), trial counsel made an objection to Ms. Mann's testimony on the basis that it was not "relevant at all to the circumstances that are currently before the Court." (Dkt. 1-5 at 13).  Appellate counsel did advance an unpreserved "confusion to the jury" argument in addition to the preserved relevancy argument, but the Court cannot conclude from this alone that appellate counsel were not acting out of reasonable strategy.   Reasonable attorneys may differ when assessing the relative strengths of potential appellate arguments.

Notably, Petitioner's argument that *Gersten*, *Eze*, *Pavel*, and *Lindstadt* impose an affirmative notice requirement on the prosecution appears to be a novel one.  Petitioner has not cited, and the Court has not found in its own research, any cases in the Second Circuit or in New York State in which a criminal defendant or habeas petitioner has made such an argument at all, much less successfully.  The Fourth Department reasonably found that Petitioner's appellate counsel's alleged failure to make a novel argument based on *Gersten*, *Eze*, *Pavel*, and *Lindstadt* was not constitutionally ineffective.  Petitioner has not met the high burden of demonstrating that it was objectively unreasonable for the Fourth Department to conclude that appellate counsel legitimately chose not to pursue additional arguments based on the admission of Ms. Mann's testimony.

## B.    The Trial Court's Admission of Child 1's "Excited Utterances"

Petitioner also asserts that his appellate counsel failed to argue that the trial court erred in admitting as excited utterances Child 1's out-of-court statements to her sister and Child 2 regarding Petitioner's sexual abuse.   Petitioner's trial counsel objected to the admission of these statements on the basis that there was no specific evidence by which it could be determined that the statements and the exciting event were sufficiently close in time and on the basis that "there is no information in the record to establish the excited nature, shock nature, spontaneous statement of emotional circumstances regarding the speaker for you to support this offer at this time." (Dkt. 1-4 at 1).  The trial court admitted the statements over trial counsel's objection.  (*Id.* at 2).

Under New York State law, "[a]n out-of-court statement is properly admissible under the excited utterance exception [to the rule against hearsay] when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication." *People v. Johnson*, 1 N.Y.3d 302, 306 (2003).  Although a trial court should consider "the period of time between the startling event and the out-of-court statement" in determining whether the exception applies, "there can be no definite or fixed period of time within which the declaration must have been made, and each case must depend upon its own circumstances." *Id.*; *see, e.g., People v. Brooks*, 71 N.Y.2d 877, 878 (1988) (statements made two to two-and-one-half hours after shooting incident were admissible as excited utterances).  The Fourth Department has previously held that the

sexual abuse of a child is the kind of "sudden and coercive" event that produces "emotional trauma" and therefore can lead to an excited utterance. *People v. Knapp*, 139 A.D.2d 931, 931 (4th Dep't 1988).

In this case, prior to testifying as to what Child 1 told her, Child 2 first testified that she and Child 1's sister were outside while Child 1 was lying on the couch with Petitioner, that they ate some food, and that they then came inside and went into Child 2's bedroom, where Child 1 immediately joined them. (Dkt. 1-3 at 48). The prosecution further represented to the Court that Child 1 would testify that she left the couch after the sexual abuse and "went in the bedroom and told Child 2 what happened." (Dkt. 1-3 at 50). Based on Child 2's testimony and the prosecution's representation, the trial court allowed the out-of-court statements as excited utterances. (Dkt. 1-4 at 2). Child 1 did subsequently testify that after Petitioner sexually abused her, she got up, went into the bedroom where her sister and Child 2 were playing, and told them what had happened. (Dkt. 1-7 at 50).

This Court is not entirely convinced the evidence presented to the trial court justified admitting the out-of-court statements as excited utterances. While the sexual abuse of a six-year-old child is certainly the kind of traumatic event that could trigger an excited utterance (and Petitioner's arguments to the contrary are without basis in fact or law), it is unclear precisely how much time passed between the sexual abuse testified to by Child 1 and her statement to Child 2. However, the Court does note that, based on the testimony of both children, a reasonable inference could be drawn that it was a relatively

short period of time (namely, until the television show that Child 1 and Petitioner had been watching ended). (*See* Dkt. 1-8 at 17-18). Child 2 also specifically testified that the time between her and Child 1's sister coming into the house and going into the bedroom was only "about two minutes." (Dkt. 1-4 at 42). Moreover, this Court's doubts as to the soundness of the trial court's ruling fall far short of establishing constitutionally inadequate performance by appellate counsel. A reasonable attorney, having reviewed the record in this case, could have concluded that the out-of-court statements were properly admitted.

A reasonable attorney could have concluded that the arguments raised on direct appeal had an equal or stronger probability of success. Under *Strickland*, this Court "will not second guess counsel's reasonable assessment of the benefits of competing courses of action." *Vasta v. United States*, 89 F. Supp. 2d 424, 426 (S.D.N.Y. 1999); *see also Rodriguez v. Hanslmaier*, 982 F. Supp. 279, 286 (S.D.N.Y. 1997) ("[R]eviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues."). Petitioner has not demonstrated that it was objectively unreasonable for the Fourth Department to conclude that appellate counsel reasonably omitted any argument as to admission of Child 1's out-of-court statements.

### C.    The Amendment of Count 3 at the Close of Proof

Finally, Petitioner argues that his appellate counsel were ineffective because they did not contest the trial court's ruling allowing the prosecution to amend Count 3 at the close of proof.

Count 3 of the indictment originally charged Petitioner with having sexually abused Child 2 "on or about one day during the period August 27 through August 31, 2008. . . ." (Dkt. 5-2 at 37).   At the close of proof, the prosecution moved, pursuant to New York Criminal Procedure Law § 200.70, to amend Count 3 to conform to the proof – specifically, to include August 26, 2008.   (*See* Dkt. 1-9 at 40).   Defense counsel conceded that the prosecution had the right to amend, but objected on the basis that all trial decisions had been made based on the information in the indictment and the bill of particulars.   (*Id.* at 40-41).

Petitioner argues that appellate counsel's decision not to pursue this argument on appeal was constitutionally deficient.   According to Petitioner, the extension of the time period set forth in Count 3 by one day changed the prosecution's theory of the case and prejudiced Petitioner.

Under New York Criminal Procedure Law § 200.70:

> At any time before or during trial, the court may, upon application of the people and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits.

N.Y. Crim. Proc. Law § 200.70(1).   Here, Petitioner argues that the amendment changed the prosecution's theory of the case and prejudiced Petitioner because the prosecution had previously been operating on the theory that Child 2 was sexually abused after the

sleepover with Child 1 and Child 1's sister, but changed their theory to include the possibility that she was sexually abused during the sleepover after Child 2 testified that she slept in Petitioner's bed that evening.

A reasonable appellate attorney could have concluded that this argument was not likely to succeed on appeal. There are numerous cases from the various departments of the New York State Supreme Court, Appellate Division, in which the courts have held that minor modifications of the time frame set forth in the indictment are permissible. *See, e.g., People v. Fehr*, 45 A.D.3d 920, 923 (3rd Dep't 2007) (no error in permitting the prosecution to amend the first count in the indictment to shorten the time frame alleged for the charge of course of sexual conduct against a child in the first degree); *People v. Hankins*, 265 A.D.2d 572, 572 (2d Dep't 1999) (no error in permitting prosecution to amend the indictment to change the date of the crime from "on or about October 30" to "on or about October 29 into October 30" because "[t]he minor temporal correction did not change the theory of the prosecution or cause any prejudice to the defendant"); *People v. Hale*, 236 A.D.2d 807, 807 (4th Dep't 1997) ("The court properly amended the indictment to reflect that the crime occurred on November 26, 1993 or November 27, 1993, rather than November 25, 1993 or November 26, 1993. The amendment did not change the theory of the prosecution or otherwise prejudice defendant. . . .") (citation omitted).  By contrast, Petitioner has not cited a single case in which a court found that an amendment to

the indictment of one day changed the prosecution's theory of the case or prejudiced the defendant.

Petitioner argues that he could not have been convicted on Count 3 absent the amendment because no evidence was presented at trial that he abused Child 2 in late August 2008 other than during the sleepover. (*See* Dkt. 1-11 at 40). This argument is without merit. Child 2 specifically testified at trial that during the last period of time that she stayed at Petitioner's house (which had been established to be in late August 2008), she stayed some nights while Child 1 and Child 1's sister were not there, she slept in her father's bed on those nights, and he put his hands down her pants and touched her vagina. (Dkt. 1-4 at 4-5). Child 2's mother had previously testified that Child 2 spent "the last week of August, 2008" at Petitioner's house. (Dkt. 1-2 at 28).

It is also relevant that the original indictment alleged that the abuse occurred "**on or about** one day during the period August 27 through August 31, 2008. . . ." (Dkt. 5-2 at 37) (emphasis added). The Fourth Department has previously held that where an indictment alleged that a sexual assault on a child took place "on or about between June, 1988 through August 20, 1988,  . . . [a]ny variance between the time frame specified in the indictment and the trial testimony . . . was immaterial in light of the defense presented." *People v. Melfa*, 244 A.D.2d 857, 858 (4th Dep't 1997); *see also People v. La Marca*, 3 N.Y.2d 452, 458-59 (1957) ("[E]xcept where time is a material ingredient of the crime the prosecution is not confined in its evidence to the precise date laid in the indictment, but may prove that

the offense was committed at any time prior to the commencement of the prosecution and such proof does not constitute a material variance."). In this case, Petitioner's defense was not that he had an alibi for a particular evening – instead, he maintained that he had never sexually abused his daughter. As a result, even had the prosecution not amended Count 3 of the indictment, the claimed one day variance between the date range alleged in the indictment and the trial testimony would have been immaterial.

Having reviewed the arguments that Petitioner contends appellate counsel should have made, as well as the arguments that appellate counsel actually did make, the Court cannot conclude that the omitted issues were "significant and obvious" or that the issues appellate counsel raised were "clearly and significantly weaker." *Mayo*, 13 F.3d at 533. As a result, the Court also cannot conclude that the Fourth Department's denial of Petitioner's petition for a writ of error *coram nobis* was objectively unreasonable.

## III.   Petitioner Has Not Been Prejudiced by Appellate Counsel's Performance

As discussed in detail above, Petitioner has failed to show that his appellate counsel performed defectively. However, even assuming *arguendo* that appellate counsel's performance was inadequate, Petitioner cannot meet the second prong of the *Strickland* test, which requires him to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (quotation omitted). "Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Samuel v. LaValley*, No. 12 Civ.

2372 (BMC), 2013 WL 550688, at *9 (E.D.N.Y. Feb. 12, 2013), *aff'd*, 551 F. App'x 614 (2d Cir. 2014) (quotation omitted). In the case of Petitioner's claim of ineffective assistance of appellate counsel, this prong requires the Court to inquire into whether the Fourth Department would have been likely to grant Petitioner's appeal had appellate counsel proceeded as Petitioner now urges.

As the court noted in *Anderson v. Keane*, 283 F. Supp. 2d 936 (S.D.N.Y. 2003), the Court's "mandated deference to the Appellate Division's holding on [Petitioner's] *coram nobis* petition" is particularly relevant to this inquiry because "the Appellate Division is manifestly more familiar with its inclination" to be persuaded by a particular argument "than any federal judge could possibly be." *Id.* at 946. In this case, the Court holds that, considered as a whole, the claimed failures of appellate counsel did not prejudice Petitioner.

The arguments that Petitioner now claims appellate counsel should have raised are not, for the reasons discussed at length above, claims that are likely to have succeeded. Moreover, even if the Fourth Department found merit in any or all of the claims, it is probable that the errors would have been determined to be harmless. With respect to the CSAAS evidence, trial counsel was clearly prepared for this evidence and was able to effectively and efficiently cross-examine Ms. Mann and establish for the jury the limitations of such evidence. *See, e.g., People v. McCaffrey*, 270 A.D.2d 822, 822-23 (4th Dep't 2000) (prosecution's failure to properly disclose expert's opinion was harmless

because the trial court offered defendant an adjournment before commencing cross-examination and "defense counsel conducted a thorough and effective cross-examination" of the expert witness).

With respect to Child 1's out-of-court statements, Child 1 herself testified as to Petitioner's sexual abuse of her. Although Petitioner argues that "[Child 1's] out-of-court statements likely carried greater weight with the jury than her testimony," (Dkt. 1-11 at 34), Child 2's testimony was not the only evidence that Child 1 reported the sexual abuse shortly after it occurred. Child 1 testified, without objection, that she told her mother what had happened the next day. (Dkt. 1-8 at 1). Her mother testified, without objection, that Child 1 told her what had taken place in the car the next day and that as a result, she called the police. (Dkt. 1-7 at 26-27). Petitioner has offered no reason why the jury would have been particularly swayed by Child 1's statements to Child 2 as opposed to her statements to her mother. It was not objectively unreasonable for the Fourth Department to reject the argument that it would have reversed Petitioner's conviction on this ground. *See, e.g., People v. Shelton*, 209 A.D.2d 963, 964 (4th Dep't 1994) (improper admission of non-testifying co-defendant's statement was harmless because it was merely cumulative).

Finally, with respect to the amendment of Count 3 of the indictment, as discussed above, the language of Count 3 (*i.e.* "on or about one day during the period August 27 through August 31, 2008") already encompassed abuse occurring on August 26, 2008. Moreover, and as Respondent correctly points out, Petitioner's defense did not rest on

having an alibi for a particular day or otherwise contesting the dates on which he allegedly

sexually abused Child 2.   Instead, Petitioner categorically denied that any abuse had ever

happened.   The evidence at trial established that Petitioner was home with Child 2, Child

1's sister, and Child 1 the evening of August 26, 2008.   Petitioner has not suggested that

there is any different or additional evidence that he could have offered had the amendment

been made earlier (which he concedes would have been allowable).   (*See* Dkt. 1-11 at 39).

Petitioner cannot demonstrate that the Fourth Department would have been likely to accept

this argument had it been made on direct appeal.

## CONCLUSION

Petitioner has failed to demonstrate that he is entitled to habeas corpus relief.   The

Fourth Department's determination that Petitioner's appellate counsel provided

constitutionally adequate representation was objectively reasonable.   The relief requested

by Petitioner is denied and the petition is dismissed.

Having dismissed the petition, the Court must determine whether to issue a

certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A).   The Court can only

issue a certificate of appealability if it determines that Petitioner has "made a substantial

showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The Second

Circuit Court of Appeals has explained that "a 'substantial showing' does not compel a

petitioner to demonstrate that he would prevail on the merits, but merely that the issues

involved in his case 'are debatable among jurists of reason; that a court *could* resolve the

-26-

issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Based on the record in this case, the Court declines to issue a certificate of appealability.  *See, e.g., Carrasquillo v. Graham*, No. 10-CV-0197T, 2011 WL 3159106, at *9 (W.D.N.Y. July 26, 2011).

      SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 7, 2015
      Rochester, New York